

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANDREW PAKHOMOV,** | ] | |
| | ] | |
| **Petitioner,** | ] | |
| | ] | |
| **v.** | ] | **5:16-cv-00289-ACA** |
| | ] | |
| **PHYLLIS J BILLUPS, et al.,** | ] | |
| | ] | |
| **Respondents.** | ] | |

## <u>MEMORANDUM OPINION</u>

Andrew Pakhomov was convicted of the murder of his wife, Yelena Zakin, and sentenced to 45 years imprisonment. He has filed an amended 28 U.S.C. § 2254 petition for writ of habeas corpus, asserting six grounds for relief:

(1) the state trial court violated his right to due process by failing to preserve transcripts of voir dire, opening statements, and closing arguments;

(2) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence;

(3) the State presented misleading evidence and perjury at trial;

(4) the State violated his right to confrontation by presenting statements made by the victim before her death;

(5) trial counsel was ineffective; and

(6) appellate counsel was ineffective.

(Doc. 8 at 6–13).

The magistrate judge recommended denying Claims One, Three, Four, and Six as unexhausted and procedurally defaulted because Dr. Pakhomov failed to raise those claims in the state courts. (Doc. 14 at 13–15). The magistrate judge also recommended finding parts of Claim Five procedurally defaulted. (*Id.* at 39–40, 44–45, 60–61). He recommended denying Claim Two and the rest of Claim Five on the merits. (*Id.* at 15–83).

The court reviews *de novo* the parts of the report and recommendation to which the petitioner objects. *See* 28 U.S.C. § 636(b)(1). Dr. Pakhomov filed objections to parts of the report and recommendation. (Doc. 15). He offers no objections to the recommendation that the court find Claims One, Three, Four, parts of Claim Five, and Claim Six procedurally defaulted. (*See generally id.*). Accordingly, the court **ACCEPTS** the report and **ADOPTS** the recommendation to deny those claims as procedurally defaulted.

But Dr. Pakhomov does object to the magistrate judge's recommendation about Claim Two and the rest of Claim Five, and he contends that the magistrate judge failed to address his argument that Alabama Rule of Criminal Procedure 19.4 is unconstitutional. (Doc. 15). After a *de novo* review of those parts of the report and recommendation, the court **OVERRULES** the objections but **MODIFIES** the report and recommendation in part. The court does not find it necessary to retread all the same ground that the magistrate judge has already covered. Accordingly,

this memorandum opinion will address only the objections that the court has determined warrant further discussion. The court **ACCEPTS** the report and **ADOPTS** the recommendation as to all other claims.

## I.    FACTUAL BACKGROUND

In deciding a state prisoner's § 2254 petition, this court reviews the state court's adjudication of the petitioner's claims. *See* 28 U.S.C. § 2254(d). Here, the court reviews the Alabama Court of Criminal Appeals' decision affirming the denial of Dr. Pakhomov's amended Alabama Rule of Criminal Procedure 32 petition. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Powell v. Allen*, 602 F.3d 1263, 1268 n.2 (11th Cir. 2010). The Alabama Court of Criminal Appeals declined to "search the record from [Dr. Pakhomov's] direct appeal to ascertain the factual basis" of his claims. (Doc. 8 at 40). It therefore considered only the allegations made in his amended Rule 32 petition and the factual description given in his brief on direct appeal, which he had attached to his petition. (*Id.*). Accordingly, this court may "look only to the allegations in [the petitioner's] Rule 32 petition and whether those allegations sufficiently state a claim" for habeas relief. *Powell*, 602 F.3d at 1273. The court draws the following description of the facts from Dr. Pakhomov's Rule 32 petition and appellate brief.

Dr. Pakhomov and his wife, Ms. Zakin, had a tumultuous relationship. In January and February 2006, police were called to Dr. Pakhomov's residence in

response to domestic disturbances. (Doc. 10-18 at 75–76). On May 24, 2006, Ms. Zakin assaulted "a woman with whom she believed her husband was having an affair," resulting in her arrest for domestic violence assault and criminal mischief. (*Id.* at 76). The day after Ms. Zakin's arrest, police were again called to Dr. Pakhomov's residence in response to a domestic disturbance. (*Id.* at 76). At trial, several police officers testified about statements Ms. Zakin made when they responded to the domestic disturbance calls, including her accusation that Dr. Pakhomov had hit her on the head with a rock. (Doc. 10-20 at 20–24).

Shortly after May 29, 2006, Dr. Pakhomov reported his wife missing. (Doc. 10-18 at 76). On June 1, 2006, some local fishermen found Ms. Zakin's body floating in the Tennessee River. (*Id.* at 74). She had been strangled to death. (*Id.* at 74–75). Police who removed her body from the river found that a woven leather belt held a backpack filled with rocks to her body. (*Id.*).

Investigators collected various items from the nearby area, including a pair of white fabric gloves. (Doc. 10-18 at 74). The lead investigator, Sergeant Rick Archer, testified that DNA belonging to a felon named Wallace Kent Burgess was found in the gloves, and that Dr. Pakhomov was excluded as a DNA contributor. (*Id.* at 74–75). Sergeant Archer testified that after he received the DNA results, he interviewed Mr. Burgess, but "it is unclear from the testimony whether Sgt. Archer discussed the gloves with Mr. Burgess, and what information regarding them was

obtained from that interview." (*Id.* at 33; *see also id.* at 37). Sergeant Archer did testify that at the time of the interview, Mr. Burgess was wheelchair-bound. (Doc. 8 at 84).

Despite the evidence that the DNA found in the gloves did not belong to Dr. Pakhomov, the State presented evidence attempting to connect Dr. Pakhomov to the gloves. Specifically, it presented evidence that the same type of glove was often used in a laboratory setting; that a nearby NASA facility was the only place in the area where that brand of glove had been sent; and that Dr. Pakhomov would have had access to the NASA building "and thus, impliedly, to gloves similar to those found at the scene." (Doc. 10-18 at 34, 38).

Investigators searched Dr. Pakhomov's Jeep and found blood stains belonging to Ms. Zakin inside. (Doc. 10-18 at 75). A forensic analyst testified that the blood stains were "fresh" but that he could not determine exactly how long they had been there. (*Id.* at 42). A forensic analyst also testified that Ms. Zakin's fingernail clippings contained DNA belonging to both her and Dr. Pakhomov. (*Id.* at 75). Finally, Sergeant Archer testified that in Dr. Pakhomov's house he found a woven belt "similar" to the one found on Ms. Zakin's body, and that the two belts had "nearly identical" wear patterns. (*Id.* at 40, 75).

The woman Dr. Pakhomov was having an affair with was apparently Melissa Dehollander; Dr. Pakhomov's amended Rule 32 petition referred to

Ms. Dehollander's "detail[ed]" testimony about their relationship, as well as testimony by her husband, James Dehollander, that Dr. Pakhomov tried to prevent their marriage. (Doc. 10-18 at 52–53). Dr. Pakhomov did not describe Ms. Dehollander's testimony in any further detail, but he did assert that as a result of statements Ms. Dehollander made to the police about her relationship with him, she was charged with perjury and had to perform community service. (*Id.* at 34 n.7).

Dr. Pakhomov also referred to testimony that he showed someone named Gloria Green a note and that he provided law enforcement with a different note. (Doc. 10-18 at 56). He did not explain who Ms. Green was, why he showed her the note, or what either note said. (*See id.*). Instead, he alleged that trial counsel's cross-examination of Ms. Green opened the door to harmful testimony that "fuel[ed] . . . speculation that the note provided to law enforcement was forged." (*Id.*). Sergeant Archer testified that he requested a handwriting analysis of the notes, but the analysis was never completed. (*See* Doc. 10-18 at 34–35 & n.8).

In the years before Dr. Pakhomov's trial for Ms. Zakin's murder, "there was a great deal of pre-trial publicity," including "dozens of articles . . . as well as frequent television reports" that Dr. Pakhomov alleged included prejudicial and incorrect information about the evidence against him. (Doc. 10-18 at 18–22).

The state trial court did not record most of the voir dire, but did record some of the qualifying questions that it asked the forty-person venire. (Doc. 10-18 at 25–26). For example, the transcript reflects that the state trial court asked the venire if any of them had a fixed opinion as to the guilt or innocence of the defendant. (*Id.* at 26; Doc. 10-4 at 65). Three potential jurors raised their hands in response to that question, and at some point a fourth juror also indicated that she had a fixed opinion on the case. (Doc. 10-18 at 26; Doc. 10-4 at 65, 70). The state trial court conducted an individual voir dire of those four potential jurors, and each stated that she believed Dr. Pakhomov was guilty based on information she had learned about the case before being called for jury duty. (Doc. 10-18 at 26; Doc. 10-4 at 72–76, 78–83). Specifically, three of the potential jurors had been exposed to pretrial media reporting, and one had obtained information from speaking with someone else about the case. (Doc. 10-4 at 72, 75, 79, 82). The state trial court struck each of the four potential jurors for cause. (Doc. 10-18 at 26; Doc. 10-4 at 85).

The jury found Dr. Pakhomov guilty of murder (doc. 10-7 at 180), and the state trial court sentenced Dr. Pakhomov to 45 years imprisonment (doc. 10-8 at 6).

## II. PROCEDURAL HISTORY

The magistrate judge set out the procedural history at length in his report and recommendation and the court will not reiterate that entire history here. (*See* Doc.

14 at 1–7). Of relevance to this memorandum opinion, Dr. Pakhomov retained an attorney to represent him at trial. (Doc. 10-18 at 65–66). At some point after the trial, the attorney apparently placed a lien on Dr. Pakhomov's case files because Dr. Pakhomov had not paid him. (*See* Doc. 8 at 118; Doc. 8-12 at 2; Doc. 8-15 at 2). Dr. Pakhomov's habeas counsel was unable to obtain the case files either from trial counsel or from the Rule 32 court. (*See* Doc. 8 at 118; Doc. 10-21 at 97–99).

Proceeding without the case files, Dr. Pakhomov filed in state court an amended petition for post-conviction relief under Alabama Rule of Criminal Procedure 32, asserting that (1) the denial of access to his case files violated his due process rights; (2) the State violated *Brady* by failing to disclose the interview with Mr. Burgess, a plea agreement with Ms. Dehollander, and a report on the handwriting in the note or notes Dr. Pakhomov provided to the police; and (3) trial counsel provided ineffective assistance in a number of ways. (Doc. 10-18 at 9–13, 32–35, 43–61).

The state trial court denied Dr. Pakhomov's amended Rule 32 petition in part on the merits and in part as time-barred. (Doc. 10-21 at 97–103; Doc. 10-22 at 2–4). On appeal, the Alabama Court of Criminal Appeals declined to address the timeliness of the petition and affirmed the denial entirely on the merits. (Doc. 8 at 18–41). It determined that one of Dr. Pakhomov's *Brady* claims failed as a matter of law and the rest were insufficiently pleaded. (*Id.* at 33–34). And it held that

Dr. Pakhomov's ineffective assistance claims failed because although he had adequately pleaded deficient performance, he had failed to sufficiently plead prejudice. (*Id.* at 39–40). The Alabama Supreme Court denied a writ of certiorari without an opinion. (Doc. 10-30).

## III. DISCUSSION

As stated above, this court reviews the Alabama Court of Criminal Appeals' decision because it is the last state court decision to provide a rationale for denying Dr. Pakhomov's claims. *See Wilson*, 138 S. Ct. at 1192. The Alabama Court of Criminal Appeals denied the claims at issue in this memorandum opinion—Claims Two and Five—as either facially meritless or insufficiently pleaded. (*See* Doc. 8 at 33–34, 39–40). The Eleventh Circuit has repeatedly held that an Alabama court's denial of a Rule 32 petition as insufficiently pleaded is a ruling on the merits for purposes of federal habeas review. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1331 (11th Cir. 2012); *Borden v. Allen*, 646 F.3d 785, 813 (11th Cir. 2011); *Powell*, 602 F.3d at 1273. Accordingly, the Alabama Court of Criminal Appeals' decision is an adjudication on the merits for purposes of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See* 28 U.S.C. § 2254(d).

AEDPA prohibits a federal court from granting habeas corpus relief if "the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

"[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

To result in a decision that was "contrary to" clearly established federal law, the state court must have "arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decide[d] a case differently than [the] Court has on a set of materially indistinguishable facts."  *Id.* at 412–13.  To result in a decision that involved an "unreasonable application of" clearly established federal law, the state court must have "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case."  *Id.* at 413.  A state court's application of federal law is not unreasonable unless it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### 1.    Sufficiency of the Amended Rule 32 Petition

In his objections to the report and recommendation, Dr. Pakhomov contends that the magistrate judge erred in finding that he insufficiently pleaded his

amended Rule 32 petition. (Doc. 15 at 2). Contrary to Dr. Pakhomov's contention, the magistrate judge did not recommend finding that his amended Rule 32 petition was insufficiently pleaded under Alabama law; instead, the magistrate judge described the relevant Alabama law in order to explain how the state court ruled on his petition. (*See* Doc. 14 at 17).

Next, Dr. Pakhomov states that he sufficiently pleaded his claims because "each claim is separately alleged and supported by reference to the trial transcript and relevant law." (Doc. 15 at 2). Again, the question before this court is not whether Dr. Pakhomov sufficiently pleaded his claims under Alabama's pleading standards, but whether, based on the evidence placed before that state court, the state court's decision was contrary to or an unreasonable determination of clearly established federal law. *See* 28 U.S.C. § 2254(d). To make that determination, a federal court may "look only to the allegations in [the petitioner]'s Rule 32 petition and whether those allegations sufficiently state a claim for ineffective assistance of counsel." *Powell*, 602 F.3d at 1273. That is true even where the petitioner "has made additional allegations . . . in his federal habeas petition." *Id.* at 1273 n.8.

The court cannot consider additional allegations unless it determines that the state court's decision based on the record before it was contrary to or an unreasonable application of clearly established federal law. *Id.* ("[W]e do not consider . . . supplemental allegations or evidence when reviewing the

reasonableness of the state court's resolution of this claim, which was based on the allegations before it."); *cf. Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) ("[Supreme Court] cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did.").

Finally, Dr. Pakhomov objects to the report and recommendation on the basis that he could not set out all the facts he needed to plead his claims because trial counsel deprived him of the full transcript of his trial and the case files. (Doc. 15 at 2–3). The only parts of the trial that were not recorded were parts of the voir dire, the opening statements, and the closing arguments; and for obvious reasons the court does not know what the case files might have contained. Nevertheless, the omitted information would not change the outcome in this case.

With respect to his *Brady* claims, Dr. Pakhomov has not explained how the missing parts of the transcript would have helped him. In one of his *Brady* claims, he asserted that the State withheld the existence of an interview with a witness. (Doc. 10-18 at 33–34). The state court did not deny this claim as insufficiently pleaded, so the lack of a complete transcript could not have affected the sufficiency of his pleading. (*See* Doc. 8 at 33). In his other two *Brady* claims, Dr. Pakhomov asserted that the State withheld the existence of a prosecution witness's plea agreement and that the State withheld the results of a handwriting test. (Doc. 10-18 at 34–35 & nn.7–8). The state court did deny those claims as insufficiently

pleaded. (*See* Doc. 8 at 34). But this court cannot discern how a transcription of the voir dire, opening statements, or closing arguments would have helped Dr. Pakhomov plead the elements of a meritorious *Brady* claim, which has nothing to do with which jurors were seated and what arguments counsel made. *See Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1292 (11th Cir. 2012) (setting out the elements of a valid *Brady* claim).

Likewise, the missing case files would not have helped Dr. Pakhomov with his *Brady* claims because, by their very nature, those claims depend on the State's failure to disclose that information to trial counsel. If the State withheld evidence from trial counsel, trial counsel's files would not contain that information. Even if trial counsel had not placed a lien on the files, the content of the files could not have helped Dr. Pakhomov plead or prove his *Brady* claims.

Similarly, the missing parts of the trial record would have been irrelevant to most of Dr. Pakhomov's ineffective assistance claims. Aside from his claim that trial counsel was ineffective for failing to move for a change of venue, those claims relate to purported errors made during counsel's investigation into the case and during the examination of witnesses and admission of evidence. Again, the court is hard-pressed to think of how a transcript of the voir dire, opening statements, and closing argument would help Dr. Pakhomov plead prejudice based on events that occurred before or during trial—not during the periods that were not recorded.

The only ineffective assistance claim that the full transcript may have affected was Dr. Pakhomov's claim that trial counsel should have moved for a change of venue. But as the court will discuss below, the parts of the voir dire that were transcribed are sufficient to allow the state habeas court to make a reasonable determination that the state trial court would not have granted a motion for a change of venue.

Finally, the case files that trial counsel refused to share with Dr. Pakhomov would not have made a difference in the resolution of his ineffective assistance claims. Most of those claims relate to events that occurred during the trial (for example, failing to move for a change of venue, failing to object to irrelevant, prejudicial, or inadmissible evidence, failing to object to alleged *Brady* violations, and opening the door to harmful testimony). The case files would not help Dr. Pakhomov plead prejudice because the trial transcript would contain all the information Dr. Pakhomov needed to explain how the purported deficiencies affected the outcome of his trial.

Dr. Pakhomov also asserted that trial counsel's investigation was inadequate because he did not look into information about Ms. Zakin's drug use, erratic and unpredictable behavior, and habit of walking alone at night.[1] (Doc. 10-18 at 58–

---

[1] This court describes only Dr. Pakhomov's claim as he made it in his Rule 32 petition. Dr. Pakhomov's amended § 2254 petition added that trial counsel failed to investigate other aspects of the crime. (*See* Doc. 8 at 107–09). He did not make those assertions in his amended Rule 32 petition and as a result, this court cannot consider them. (*See* Doc. 10-18 at 58–59); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("Out of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted

59).  At best, the withheld case files would confirm Dr. Pakhomov's assertion that trial counsel did not investigate those assertions, but that confirmation alone would not satisfy the requirement that Dr. Pakhomov plead prejudice.  The content of the case files would not help him establish that, had counsel done the investigation Dr. Pakhomov wanted, a different outcome was reasonably probable; it could only help him establish the truth of his assertion about counsel's failure to conduct the investigation.  The court **OVERRULES** these objections.

2.    Alabama Rule of Criminal Procedure 19.4

In his objections to the report and recommendation, Dr. Pakhomov argues that the magistrate judge failed to address his claim that Alabama Rule of Criminal Procedure 19.4(b) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  (Doc. 15 at 3–4).  Rule 19.4 provides:

(a) In all capital cases (criminal trials in which the defendant is charged with a death penalty offense), the court reporter shall take full stenographic notes of voir dire of the jury and of the arguments of counsel, whether or not such is ordered by the judge or requested by the prosecution or defense.  This duty may not be abrogated by the judge or waived by the defendant.

(b) In all noncapital cases, the court reporter shall take full stenographic notes of the voir dire of the jury and of the arguments of counsel if directed to do so by the judge.

constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default.").

Ala. R. Crim. P. 19.4.

First, Dr. Pakhomov did not assert a claim challenging the constitutionality of Rule 19.4(b). A review of his amended § 2254 petition shows six claims for relief, none of which are that Rule 19.4(b) violates the United States Constitution. (*See* Doc. 8 at 6–13). But Dr. Pakhomov did raise an argument that Rule 19.4(b) is unconstitutional, in support of Claim One, which itself asserted that the state trial court violated his right to due process by failing to preserve transcripts of voir dire, opening statements, and closing arguments. (*See id.* at 68, 81–82).

The magistrate judge did not err by declining to address the constitutionality of Rule 19.4(b). The judge concluded that Claim One was procedurally defaulted and recommended denying the claim on that basis (doc. 14 at 13–14), a recommendation to which Dr. Pakhomov has not objected (*see* doc. 15). Accordingly, the judge did not need to address Dr. Pakhomov's arguments in support of that claim. The court **OVERRULES** this objection.

3.     Claim Two (*Brady*)

In his amended Rule 32 petition, Dr. Pakhomov asserted that the State violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), by withholding (1) the fact that Sergeant Archer interviewed Mr. Burgess, (2) evidence that the State gave Ms. Dehollander a more lenient sentence in exchange for her testimony against

him, and (3) a report by a handwriting expert about the authorship of the two notes Dr. Pakhomov gave to the police. (Doc. 10-18 at 32–35).

Under *Brady*, "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To prevail on a *Brady* claim, the petitioner must establish that "(1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the government suppressed the favorable evidence; and (4) the evidence was material." *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1292 (11th Cir. 2012) (quotation marks omitted).

"Favorable" evidence includes exculpatory evidence as well as impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgment of the jury." *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (quotation marks omitted).

### i. Interview with Mr. Burgess

Dr. Pakhomov's first *Brady* claim is that the State withheld the fact that Sergeant Archer had interviewed Mr. Burgess before his death. (Doc. 10-18 at 33–34). He explained that before trial, counsel told him that "no interview of

Mr. Burgess had been conducted before his death." (*Id.* at 33). Yet Sergeant Archer testified at trial that he had interviewed Mr. Burgess after learning that the DNA from the gloves matched Mr. Burgess' DNA. (*Id.*). Dr. Pakhomov stated that "[t]he contents of the interview with Mr. Burgess would likely have confirmed that he had used the gloves, and that Dr. Pakhomov had no connection to them, thus contradicting the harmful and misleading evidence [that Dr. Pakhomov might have obtained similar gloves from a nearby NASA facility] proffered by the prosecution." (*Id.* at 34).

The Alabama Court of Criminal Appeals denied this claim on the basis that a mid-trial disclosure of evidence cannot be a *Brady* violation. (Doc. 8 at 33). In his amended § 2254 petition, Dr. Pakhomov argued that the Alabama Court of Criminal Appeals had misinterpreted its own precedent and that under Alabama law, a mid-trial disclosure of evidence can be a *Brady* violation. (*Id.* at 85–86).

It does not matter if the state court misinterpreted its own caselaw, as long as its decision was not contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). And only the United States Supreme Court can clearly establish federal law for purposes of § 2254(d)(1). *See William*, 529 U.S. at 412. Dr. Pakhomov has not pointed to any Supreme Court case holding that a *Brady* violation can occur based on information disclosed during a trial, nor has this court's independent research uncovered any such case.

As a result, the Alabama Court of Criminal Appeals' decision was not "contrary to" clearly established criminal law. *See id.* at 412–13.

Dr. Pakhomov also has not shown that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This court cannot conclude that all fairminded jurists would disagree with the Alabama Court of Criminal Appeals' decision, because the current state of the law is unclear. And "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Hill v. Humphrey*, 662 F.3d 1335, 1346 (11th Cir. 2011) (en banc) (quotation marks omitted). The Alabama Court of Criminal Appeals' decision was not an unreasonable application of *Brady*.

But even if this court were to find that the decision was based on an unreasonable application of federal law, the court would deny the claim on the merits. Dr. Pakhomov has never asserted that the State withheld the results of the DNA test or the identification of Mr. Burgess as the person who matched the DNA found in the gloves; all he alleges is that the State withheld the fact that it conducted an interview of Mr. Burgess. Trial counsel knew of Mr. Burgess's existence and could have gone to do his own interview, thereby learning whatever information Mr. Burgess gave Sergeant Archer. Accordingly, Dr. Pakhomov

cannot show that he "could not have obtained [the withheld evidence] with reasonable diligence," which is a prerequisite for finding a *Brady* violation. *Ponticelli*, 690 F.3d at 1292.

ii.    *Ms. Dehollander's Plea Agreement*

In his amended Rule 32 petition, Dr. Pakhomov contended the State withheld evidence that Ms. Dehollander received a plea agreement for a more lenient sentence in exchange for her testimony against him. (Doc. 10-18 at 34 & n.7).   Dr. Pakhomov did not explain the basis for his belief that such a plea agreement existed. (*See id.*).   The Alabama Court of Criminal Appeals denied this claim as insufficiently pleaded because Dr. Pakhomov had not alleged facts that, if true, would establish that the allegedly undisclosed plea agreement was material. (Doc. 8 at 34).   Specifically, the Alabama Court of Criminal Appeals pointed out that Dr. Pakhomov had not alleged "what Dehollander testified to at his trial, how that testimony was important for the State, or how impeachment of that testimony would have affected the jury's verdict." (*Id.*).

This court cannot find that the Alabama Court of Criminal Appeals' decision was contrary to or an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1).   The only information that Dr. Pakhomov provided in his amended Rule 32 petition was that Ms. Dehollander testified that about their relationship and that she was charged with perjury and performed community

service as a result of statements she made to the police about that relationship. (Doc. 10-18 at 34 n.7 52).

Based on that information, the Alabama Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Brady* or its progeny. Even accepting as true that the government offered Ms. Dehollander a plea agreement with a more lenient sentence in exchange for her testimony, Dr. Pakhomov's allegations do not establish that impeachment of her testimony would have "any reasonable likelihood [of] affect[ing] the judgment of the jury." *Wearry*, 136 S. Ct. at 1006 (quotation marks omitted).

But even if the court were to find that the Alabama Court of Criminal Appeals' decision was an unreasonable application of *Brady*, the court would deny this claim on the merits. Dr. Pakhomov's allegations do not establish the existence of favorable evidence that the State withheld from him. In his amended § 2254 petition, he argues that because Ms. Dehollander faced a maximum one-year sentence, her sentence of community service and a fine gives him "reason to believe that the prosecution gave Ms. Dehollander a deal in exchange for her testimony." (Doc. 8 at 88). This allegation is too speculative to warrant habeas relief. *See Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318–19 (11th Cir. 2016) ("We emphasize that the burden is on the petitioner in a habeas corpus proceeding to allege sufficient facts to support the grant of an evidentiary hearing

and that this court will not blindly accept speculative and inconcrete claims as the basis upon which a hearing will be ordered.") (quoting *Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982).

### iii. Handwriting Test Results

In his amended Rule 32 petition, Dr. Pakhomov contended in a single sentence that the State withheld a report by a handwriting expert about the authorship of a note that Dr. Pakhomov gave the police. (Doc. 10-18 at 34–35 & n.8). Dr. Pakhomov did not explain the basis for his belief that the handwriting analysis had been completed. (*See id.*).

The Alabama Court of Criminal Appeals denied this claim as insufficiently pleaded because Dr. Pakhomov did not set out facts indicating that the handwriting report was favorable to his defense, material to the issues at trial, the significance of the note, what the note said, who purportedly wrote the note, or who he believed was the true author of the notes. (Doc. 8 at 34).

As with Dr. Pakhomov's other *Brady* claims, the court cannot find that the Alabama Court of Criminal Appeals' decision was contrary to or an unreasonable application of clearly established federal law. Dr. Pakhomov's amended Rule 32 petition made some passing references to a note that he showed someone named Ms. Green and to a note that he gave to law enforcement. (Doc. 10-18 at 56). He did not describe the content of either note, but he alleged that Ms. Green's

testimony—which he did not describe—might have led the jury to believe that he forged the note he gave to law enforcement. (*Id.* at 34–35 & n.8). These allegations are insufficient to allow the court to determine whether, if true, they would establish a violation of *Brady*.

As the Alabama Court of Criminal Appeals found, Dr. Pakhomov did not allege that the allegedly undisclosed handwriting report would have been favorable, which is the first requirement to establish a *Brady* violation. *See Ponticelli*, 690 F.3d at 1292. Pakhomov also did not allege that he could not have obtained a handwriting analysis through some other means, which is the second requirement to establish a *Brady* violation. *See id.* (requiring the defendant to establish that he did not possess the evidence and could not have obtained it with reasonable diligence). He was aware of the existence of the two notes because he showed the first one to Ms. Green and gave the second one to law enforcement. He could have retained a handwriting expert to perform a handwriting analysis, and he has proffered no explanation for why he did not.

In Dr. Pakhomov's amended § 2254 petition, he also asserts that the State violated *Brady* by failing to perform the handwriting analysis. (Doc. 8 at 83). He did not present this particular claim to the state courts, contending only that the State performed the analysis but failed to share it with trial counsel. (*See* Doc. 10-18 at 34–35 & n.8). He has therefore failed to exhaust it. *See* 28 U.S.C.

§ 2254(b)(1)(A) (prohibiting a court from granting habeas corpus on an unexhausted claim). But even if he had exhausted the claim, the court would deny it. *See id.* § 2254(b)(2) (permitting a court to deny a habeas claim despite the petitioner's failure to exhaust it). To prevail on a *Brady* claim, the State must have withheld favorable evidence. *See Brady*, 373 U.S. at 87. But Dr. Pakhomov's claim is that the State never obtained the evidence that would have exonerated him. A *Brady* claim cannot be based on a failure to disclose evidence that the State did not have. *See Ponticelli*, 690 F.3d at 1292 (requiring that the petitioner establish that "the government possessed evidence favorable to him") (quotation marks omitted).

For these reasons, the court **OVERRULES** Dr. Pakhomov's objection to the recommendation to deny Claim Two.

### 4. Claim Five (Ineffective Assistance of Trial Counsel)

In his amended Rule 32 petition, Dr. Pakhomov asserted that trial counsel was ineffective for, among other things:

(1) failing to request that voir dire, opening statements, and closing arguments be recorded;

(2) failing to move for a change of venue; and

(3) denying him access to his case files.

(Doc. 10-18 at 44–46, 60–61). The Alabama Court of Criminal Appeals denied this claim on the basis that Dr. Pakhomov had not sufficiently pleaded prejudice under *Strickland*. (Doc. 8 at 39–40).

A petitioner asserting that he received ineffective assistance of counsel must establish that counsel performed deficiently and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The proper measure of attorney performance is simply reasonableness under prevailing professional norms, and counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (alteration and quotation marks omitted) (quoting *Strickland*, 466 U.S. at 688, 690). To establish prejudice, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"[W]hen a state court's decision on an ineffective assistance claim clearly rests on only one prong of the *Strickland* test, [the court] conduct[s] a plenary review of the other one, if necessary." *Reaves v. Sec'y, Fla. Dep't of Corr.*, 872 F.3d 1137, 1151 (11th Cir. 2017). Because the Alabama Court of Criminal

Appeals concluded that Dr. Pakhomov had adequately alleged deficient performance, but had not sufficiently pleaded prejudice (doc. 8 at 39–40), this court will address only whether the state court's decision on the prejudice prong was contrary to or an unreasonable application of *Strickland*. *See Reaves*, 872 F.3d at 1151.

<blockquote>

i.    *Recording Voir Dire, Opening Statements, and Closing Arguments*

</blockquote>

In his amended Rule 32 petition, Dr. Pakhomov contended that trial counsel was ineffective for failing to order a complete transcript of the trial, including voir dire, opening statements, and closing arguments. (Doc. 10-18 at 44). He stated that with a full transcript, he could have raised "issues of a biased jury, prosecutorial misconduct, and ineffective assistance of counsel" on direct or collateral review. (*Id.* at 44–25).

The Alabama Court of Criminal Appeals' determination that Dr. Pakhomov had not established prejudice was not contrary to or an unreasonable application of *Strickland*. In a typical *Strickland* claim, the deficient performance and prejudice analyses relate to the same part of the proceeding: deficient performance at trial prejudicing the outcome of the trial, or deficient performance on appeal prejudicing the outcome of the appeal. *See Strickland*, 466 U.S. at 695("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt."); *Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) ("[W]hen the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal."). Dr. Pakhomov did not contend that counsel's failure to request that the state trial court record every part of the trial prejudiced him at trial. Accordingly, this court cannot find that the state court's decision that Dr. Pakhomov failed to sufficiently plead prejudice was unreasonable.

The Eleventh Circuit has carved out a "razor thin" exception to the rule that the court must gauge trial-level prejudice against the outcome of the trial for cases in which "counsel recognized and pressed an issue before the trial court and then neglected to take some step that is relevant only to the appellate stage." *Purvis*, 451 F.3d at 740. But even if this case fell within that exception, this court could not find that the Alabama Court of Criminal Appeals' decision was "contrary to" or "an unreasonable application of" *Strickland* based on the exception created by the Eleventh Circuit because only the United States Supreme Court can clearly establish federal law for purposes of § 2254. *See William*, 529 U.S. at 412.

The court concludes that Dr. Pakhomov has not established that the state court's denial of this claim was unreasonable. The court **OVERRULES** Dr. Pakhomov's objection to the resolution of this claim.

### ii.	Failing to Request a Change of Venue

In his amended Rule 32 petition, Dr. Pakhomov contended that trial counsel should have moved for a change of venue because of extensive pre-trial publicity around his arrest and prosecution. (Doc. 10-18 at 28, 45–46). He asserted, however, that he could not adequately plead prejudice because the voir dire was not transcribed, and so it was "impossible" to establish how many jurors were exposed to pre-trial publicity or whether counsel questioned them about their knowledge of the case and ability to be impartial. (*Id.* at 25, 29, 45). The Alabama Court of Criminal Appeals denied this claim on the basis that Dr. Pakhomov had not adequately pleaded prejudice. (Doc. 8 at 39–40).

To adequately plead prejudice for this ineffective assistance claim, Dr. Pakhomov had to assert facts raising a "reasonable probability that, but for counsel's unprofessional errors," the state trial court would have granted a motion for a change of venue. *See Strickland*, 466 U.S. at 694; *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000). Federal law does not require jurors to be completely ignorant of the crime for which the defendant is to be tried. *See Skilling v. United States*, 561 U.S. 358, 381 (2010) ("Prominence does not necessarily produce prejudice, and juror *impartiality* . . . does not require *ignorance*.") (emphases in original). The relevant question is whether "the jurors . . . had such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*,

467 U.S. 1025, 1035 (1984); *see also Irvin v. Dowd*, 366 U.S. 717, 723 (1961) ("It is not required . . . that the jurors be totally ignorant of the facts and issues involved . . . . It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court").

"One who challenges the fairness of the trial based on prejudicial publicity carries the burden of showing that prejudice resulted from the publicity. This is especially true in a federal habeas proceeding." *Ross v. Hopper*, 716 F.2d 1528, 1540 (11th Cir. 1983). The petitioner can make that showing by alleging facts showing "actual or identifiable prejudice on the part of the jury resulting from publicity; community prejudice actually infecting the jury box; or pretrial publicity so inflammatory and prejudicial and so pervasive or saturating the community as to render virtually impossible a fair trial by an impartial jury, thus raising a presumption of prejudice." *Id.* (citations omitted); *see also Meeks*, 216 F.3d at 961 ("A defendant is entitled to a change of venue if he can demonstrate either 'actual prejudice' or 'presumed prejudice.'").

Dr. Pakhomov has not alleged any facts showing that prejudice actually infected the jury; and to the contrary, the record indicates that the state trial court struck all jurors who indicated that they had a fixed opinion about the case based on pretrial publicity. *See Meeks*, 216 F.3d at 961 ("To find the existence of actual prejudice . . . . it must be shown that one or more jurors who decided the case

entertained an opinion, before hearing the evidence adduced at trial, that the defendant was guilty . . . . [and] could not have laid aside these preformed opinions and rendered a verdict based on the evidence presented in court."). Dr. Pakhomov concedes that he does not know if any of the jurors who actually decided the case entertained a fixed opinion of his guilt, and contends that because the trial court did not record the voir dire, he could never know if any of them did. (Doc. 15 at 5–6).

But the record shows that the state trial court asked the jurors if any of them had a fixed opinion of his guilt, and dismissed the ones who said they did. To the extent Dr. Pakhomov attempts to rely on actual prejudice, his allegations are conclusory and speculative, and cannot support habeas relief. *See Jones*, 834 F.3d at 1318–19 ("We emphasize that the burden is on the petitioner in a habeas corpus proceeding to allege sufficient facts to support the grant of an evidentiary hearing and that this court will not blindly accept speculative and inconcrete claims as the basis upon which a hearing will be ordered.") (quotation marks omitted). The Court of Criminal Appeals' decision was not unreasonable to the extent Dr. Pakhomov's claim was that the state trial court would have granted a motion for a change of venue based on actual prejudice from pretrial publicity.

Dr. Pakhomov also argued that "voluminous evidence . . . was available to show that Dr. Pakhomov was entitled to a change of venue because he was unable to receive a fair trial in Morgan County." (Doc. 10-18 at 46). In other words, he

contended that the pretrial publicity was so pervasive that it raised a presumption of prejudice, warranting a change of venue if counsel had moved for it. (*See id.*; *see also* Doc. 8 at118). Again, the Alabama Court of Criminal Appeals denied this claim on the basis that Dr. Pakhomov had not established that counsel's performance prejudiced his defense; *i.e.*, that had counsel moved for a change of venue, a reasonable likelihood existed that the state trial court would have found presumptive prejudice and granted the motion.

The magistrate judge reviewed each of the newspaper articles that Dr. Pakhomov attached in support of this claim, described them, and determined that most of them involved factual reporting about his indictment, arrest, arraignment, and trial dates; the articles including allegedly prejudicial information were published in 2006, years before Dr. Pakhomov's trial began in August 2009; and no articles about him were published in the year before his trial. (Doc. 14 at 72–73). The court, having also reviewed the attached articles, adopts that description and will not repeat it here. Based on those facts, the Alabama Court of Criminal Appeals' decision concluding that Dr. Pakhomov had not adequately alleged prejudice was not contrary to or an unreasonable application of clearly established federal law. *See Patton*, 467 U.S. at 1032–34 (denying a habeas claim where the pretrial publicity was at its height years before the defendant's trial and that articles published during the trial were "purely factual articles").

The court **OVERRULES** Dr. Pakhomov's objections to the resolution of this claim.

### iii.     *Denying Dr. Pakhomov Access to his Case Files*

In his amended Rule 32 petition, Dr. Pakhomov contended that trial counsel was ineffective because he "violated his ongoing obligations to Dr. Pakhomov by refusing to provide him with his case files, thereby prejudicing [his] ability to raise potentially meritorious issues on collateral appeal." (Doc. 10-18 at 60). The Alabama Court of Criminal Appeals denied this claim because Dr. Pakhomov could not make out a *Strickland* claim of ineffective assistance at trial based on prejudice suffered during collateral proceedings. (Doc. 8 at 40).

The Alabama Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Strickland*. Neither the alleged error nor the alleged prejudice occurred at Dr. Pakhomov's trial or during his appeal. Instead, trial counsel apparently placed the lien on the case files in March 2011, after trial counsel had stopped representing Dr. Pakhomov and as habeas counsel was preparing Dr. Pakhomov's Rule 32 petition. (*See* Doc. 10-16 at 20). A purported error made after the trial and appeal cannot have affected the trial or appeal in any way. And to the extent Dr. Pakhomov is attempting to assert that trial counsel's action somehow prejudiced his Rule 32 proceedings, this court is prohibited by statute from considering such a claim. *See* 28 U.S.C. § 2254(i) ("The

ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."). The court **OVERRULES** Dr. Pakhomov's objection to the resolution of this claim.

## IV. CONCLUSION

The court **OVERRULES** Dr. Pakhomov's objections. The court **ADOPTS IN PART** and **MODIFIES IN PART** the report and recommendation. The court **ADOPTS** the recommendation to deny as procedurally defaulted Claims One, Three, Four, parts of Claim Five, and Claim Six. The court **MODIFIES** the recommendation about Claims Two and Five as set out above. The court **WILL DENY** Dr. Pakhomov's amended § 2254 petition and **WILL DENY** a certificate of appealability.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this March 18, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE